# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| AARON ISBY-ISRAEL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:12-cv-116-JMS-MJD |
| JAMES WYNN, et al., | ) ) ) |
| Defendants. | ) |

## Entry Granting Defendants' Motion for Summary Judgment and Directing Further Proceedings

For the reasons explained in this Entry, the defendants' motion for summary judgment on the plaintiff's due process claim [dkt. 52] is **granted.**

### I. Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Aaron Isby-Israel ("Isby-Israel"), an inmate currently in custody at the Wabash Valley Correctional Facility ("Wabash Valley"). The remaining defendants are Director of Classification James Wynn, Superintendent Richard Brown, Assistant Superintendent Jack Hendrix, Unit Team Manager Jerry Snyder, Counselor Julie Snider, Casework Manager Beverly Gilmore, and Custody Supervisor Dusty Russell. Isby-Israel alleges in his second amended complaint that the defendants have violated his Fourteenth Amendment due process and Eighth Amendment rights by keeping him in Special Housing Unit Administrative Segregation for more than five years without a hearing or review process. He seeks damages and injunctive relief. *See* Dkt. 14.

The defendants seek resolution of Isby-Israel's due process claim through the entry of summary judgment. The defendants have not addressed the Eighth Amendment claim. Isby-Israel has opposed the motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Isby-Israel as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment.

Isby-Israel has been incarcerated in the Indiana Department of Correction ("IDOC") since before 1990. On October 12, 1990, Isby-Israel was incarcerated at Pendleton Correctional Facility ("Pendleton"), and on that date he hit a unit counselor in the face. Pendleton's staff performed a cell extraction on Isby-Israel due to the assault. A canine unit was ordered into Isby-Israel's cell, and Isby-Israel then produced a concealed, homemade weapon and stabbed and

killed the canine. Isby-Israel also stabbed two correctional officers. Isby-Israel was convicted of two counts of attempted murder and sentenced to an additional forty years in prison.[1]

On or about October 4, 2006, Isby-Israel was transferred (from the Westville Correctional Facility) to Wabash Valley. He was initially placed in the general population. On October 23, 2006, he was placed in long-term segregation under department-wide SHU administrative segregation.[2]

Isby-Israel has remained in administrative segregation for at least seven years (as of the date of Isby-Israel's response to the defendants' motion for summary judgment filed on October 10, 2013 (dkt. 56)).[3] Between 1999 and 2007, Isby-Israel received three major conduct reports, meaning Class A or B, including battery (6/4/99), intimidation (10/13/05), and disorderly conduct (10/5/07). Isby-Israel has not been convicted of any disciplinary charges of a violent nature in the past seven years. In addition, he has not had a major disciplinary infraction during the period of March 25, 2009, through October of 2013.

IDOC Policy # 01-04-101, "Adult Offender Classification," allows for an offender to be placed in department-wide administrative segregation when that offender has a history of battery

---

[1] Isby-Israel's objection to Ms. Gilmore's affidavit as hearsay is overruled. Further, her statements do not constitute evidence of prior crimes to prove character under Rule 404(b) of the *Federal Rules of Evidence.* As Isby-Israel's casework manager, her sworn statements are admissible to explain Isby-Israel's conduct history and the basis for his original and continued placement in administrative segregation.

[2] Although Isby-Israel states in his affidavit that he was not given a hearing when he was placed in long term segregation in October of 2006, the two-year statute of limitations has expired on any constitutional claim based on that allegation.

[3] Isby-Israel refers to various requests for admissions in support of his factual allegations, but those requests were merely submitted when he filed this lawsuit. Such requests were not properly served on the defendants at the proper time, and therefore any allegations contained therein are not deemed admitted for purposes of the summary judgment motion. *See* Rule 36 of the *Federal Rules of Civil Procedure.*

on others or presents an extraordinary threat to themselves or others or presents special safety and security concerns. Under IDOC policy, offenders housed in department-wide administrative segregation are reviewed for continued placement there every thirty (30) days.[4] The thirty-day review consists of examining the offender's Case Plan and other documents related to behavior, conduct, safety concerns, conduct reports, and history. It does not include a formal hearing.

Offenders in department-wide administrative segregation may request a full review of continued placement every ninety (90) days. If a request is made, the formal review includes a hearing. A casework manager interviews the offender and submits a report to the Review Committee and Unit Team Management who then decides whether or not to keep the offender segregated.

Isby-Israel has been reviewed for continued placement in department-wide administrative segregation every thirty (30) days. The parties disagree as to how many times Isby-Israel has requested a full review of his continued administrative segregation status. The defendants assert that he has requested a full review twice. Isby-Israel states that he has made more than ten such requests since December 19, 2009. It is undisputed that full reviews were conducted on or about April 7, 2011, and June 27, 2011, and both included interviews with Isby-Israel and a report that was reviewed by the Review Committee. Isby-Israel states in his affidavit that he requested a full review on June 18, 2012, and May 3, 2013, but was not afforded an in-person interview.

---

[4] Ind. Code § 11-10-1-7 provides that an offender may be involuntarily segregated from the general population if the IDOC first finds that "segregation is necessary for the offender's own physical safety or the physical safety of others," and that the IDOC "shall review an offender so segregated at least once every thirty (30) days to determine whether the reason for segregation still exists." Ind. Code § 11-10-1-7(a) and (b).

Isby-Israel has been kept on department-wide administrative segregation because of his extensive conduct report history, past behavior, violent tendencies, his inability to cooperate with Wabash Valley staff, and other factors.

In his affidavit, Isby-Israel describes some of the conditions of his confinement as follows: He has been isolated from other prisoners and has no opportunity for social contact with other human beings. He is confined to his single-man, windowless cell 23-24 hours each day. He eats all of his meals alone from food trays passed by guards through a narrow port in the cell door. Lights are kept on around the clock. He suffers from sleep deprivation and he experiences seeing spots, blurred vision, and burning and tearing of his eyes. He has no access to vocational, work, or educational programs that are offered to the general population inmates. His out-of-cell exercise is limited to one hour a day in a cramped enclosed space or cage, with no exercise equipment. He further states that he is permitted to shower three times a week, while inmates in general population are allowed to shower daily. He states that general population inmates receive daily access to a telephone, while he is allowed one phone call each week, if that. He has been given new clothes once every several years, while general population inmates are issued new clothing each year. His outgoing and incoming personal and legal mail is subjected to an open mail rule, meaning that it is routinely searched and read by defendants and other staff. During the fall and winter months, the segregation cells are frequently kept too cold with the use of air conditioning by defendants as a means of behavior modification and punishment. Hot water is often turned off as well.

**B.     Analysis**

*Due Process Claim*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that due process liberty interests prohibit restraints which impose an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Although prison inmates do not have a constitutional right to remain in general population, *see Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005), in determining whether an atypical and significant hardship exists invoking due process, "both the duration *and* the conditions of the segregation must be considered." *Marion v. Columbia Correctional Inst.,* 559 F.3d 693, 698 (7th Cir. 2009). "[I]f the conditions of segregation were significantly harsher than those in the normal prison environment, then a year of [segregation] might count as a deprivation of liberty where a few days or even weeks might not." *Id.* (internal quotation omitted).

"240 days in conditions materially more onerous than 'the ordinary incidents of prison life,' could deprive a person of a 'liberty.'" *Marion v. Radtke,* 641 F.3d 874, 875 (7th Cir. 2011) (quoting *Sandin,* 515 U.S. at 484). The "evaluation depends on the *actual* conditions of confinement and not simply… a review of state regulations." *Id.* (internal quotation omitted). *See also Wilkinson v. Austin,* 545 U.S. 209, 224 (2005) (conditions in Ohio supermax prison whereby almost all human contact was prohibited, conversation from cell to cell was not permitted, the light was on 24 hours a day, exercise was allowed 1 hour per day in a small indoor room, review was provided annually, and placement disqualified inmates from parole consideration, together gave rise to a liberty interest).

The defendants have provided no evidence as to the conditions of Isby-Israel's confinement for the past seven years, as contrasted with inmates confined in general population. Given the length of time Isby-Israel has been confined in administrative segregation, however, and accepting Isby-Israel's undisputed sworn statements concerning the conditions of his

confinement as true for purposes of the summary judgment motion, the Court finds that a due process liberty is at stake. The Court moves on to consider the question "what process is required?"

The Supreme Court has held that "[p]rison officials must engage in some sort of periodic review of the confinement of [inmates in administrative segregation]." *Hewitt v. Helms,* 459 U.S. 460, 477 n. 9 (1983) (*abrogated on other grounds by Sandin,* 515 U.S. at 484). "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* When a due process liberty interest is at stake, such as here, an inmate is entitled to "some informal, non-adversarial" procedures. *Westefer v. Neal,* 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process under these circumstances requires a periodic review of the placement determination at a frequency sufficient to ensure that "administrative segregation does not become 'a pretext for indefinite confinement.'" *Id.* (quoting *Hewitt v. Helms,* 459 U.S. 460, 477 n. (1983)). The determination of the frequency of periodic review is committed to the discretion of prison officials. *Id.; see also Toussaint v. McCarthy,* 926 F.2d 800, 803 (9th Cir. 1990) (120 day interval satisfied due process). In sum, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Westefer,* 682 F.3d at 685.

Isby-Israel argues that during his seven years of confinement in department-wide administrative segregation, all of the thirty (30) day review decisions sent to him contain essentially the same language and information, with occasional updates. The reasons given for continuing his confinement have been: "Your status has been reviewed and there are no changes recommended to the Southern Regional Director at this time. Your current department-wide

administrative segregation status shall remain in effect unless otherwise rescinded by the Southern Regional Director."

The defendants argue that Isby-Israel's due process rights have not been violated. They assert that he was initially placed in department-wide segregation because he killed a canine and tried to kill two human correctional officers while incarcerated in 1990, and he has received periodic reviews every thirty (30) days since that time. They contend that the Court should give deference to the IDOC's determination that Isby-Israel's continued placement in segregation is warranted because he remains a security threat to the facility. They also argue that Isby-Israel has been provided all of the process to which he is entitled: thirty (30) day reviews and a full review with the offender's presence every ninety (90) days when requested by Isby-Israel. The Court agrees.

It is undisputed that during Isby-Israel's time in administrative segregation, he has received periodic reviews of that placement every thirty (30) days. Isby-Israel argues that such review has been perfunctory, but he has not cited to any authority which requires additional process. The required process is informal and non-adversarial. Isby-Israel also has an opportunity for more formal hearings every ninety (90) days, which goes beyond what is required by the Constitution. The parties dispute whether Isby-Israel has requested any ninety (90) day reviews since 2011. This does not create a genuine issue of material fact, however, because he has received thirty (30) day reviews. As noted above, prison officials must be accorded substantial discretion and flexibility in determining the security risks presented by offenders in administrative segregation. Under these circumstances, the defendants are entitled to summary judgment on Isby-Israel's due process claim. Because there has been no violation of Isby-Israel's due process rights, the Court need not reach the defendants' additional defense that they are

entitled to qualified immunity. *Mucha v. Village of Oak Brook,* 650 F.3d 1053, 1057-58 (7th Cir. 2011) (when there is no constitutional violation, defendants "do not require the additional protection of qualified immunity.").

*Eighth Amendment Claim*

The defendants have not sought summary judgment on Isby-Israel's Eighth Amendment claim. The Eighth Amendment requires the state to provide prisoners with "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Whether prolonged confinement in administrative segregation constitutes cruel and unusual punishment in violation of the Eighth Amendment "depends on the duration and nature of the segregation and the existence of feasible alternatives." *Walker v. Shansky,* 28 F.3d 666, 673 (7th Cir. 1994); *see also Rice ex rel. Rice v. Correctional Medical Services,* 675 F.3d 650, 666 (7th Cir. 2012) (acknowledging the possibility that long-term administrative segregation could violate the Eighth Amendment). The defendants have not addressed this claim at all. Therefore, the plaintiff's Eighth Amendment claim remains pending.

### IV. Conclusion

### A.

For the reasons discussed above, the defendants' motion for summary judgment [dkt. 52] as to plaintiff's due process claim is **granted.** No partial final judgment shall issue at this time.

### B.

This ruling leaves pending the Eighth Amendment claim. The parties shall have **through July 23, 2014,** in which to propose a schedule for resolving this matter, whether by settlement, trial or further dispositive motion.

**IT IS SO ORDERED.**

06/24/2014

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

AARON ISBY-ISRAEL, #892219, WABASH VALLEY CF, Inmate Mail/Parcels, 6908 S. Old US Hwy 41, P.O. Box 1111, CARLISLE, IN 47838