UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AARON ISBY-ISRAEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RICHARD BROWN et al., | )  Case No.: 2:12-cv-00116-JMS-MJD |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S POST-TRIAL BRIEF**

Pursuant to the Court's September 28, 2018 Amended Minute Entry [Dkt. 263], Plaintiff Aaron Isby-Israel respectfully submits this post-trial brief.

**I.     Defendants do not meet their *Hewitt* burden by sending review forms with false statements and conducting reviews "if and only if the offender requests" one.**

Defendants told this Court they reviewed Mr. Isby for "continued placement" in solitary confinement "every thirty days," and that the "thirty-day review consists of examining [Mr. Isby's] Case Plan and other documents related to behavior, conduct and safety concerns, as well as reviewing any conduct reports and history." [Dkt. 52-1.] They told the Seventh Circuit the "30-day review process passes constitutional muster." Br. of Appellees at 22, *Isby v. Brown*, No. 15-3334 (7th Cir. Dec. 7, 2016). As Defendants intended, both courts relied on those statements.

We now know that "no review [is] actually conducted in connection with [the] 30-day review" forms, that the 30-day reviews are not "reviews" in "any meaningful sense of the word," and that the statement on the 30-day review forms that Mr. Isby's "status ha[d] been reviewed" was "false." The forms were "auto populated"; their conclusions "preordained."[1]

---

[1] These quotations come from Charles Dugan's deposition at 177:16-21, 254:17-19, and 271:11-12, and from trial. We have ordered the trial transcript and will provide pinpoint citations when it is available. Mr. Dugan generated the 30-day review forms for Mr. Isby (and up to 143 other prisoners at a time) for several years.

After those revelations, Defendants changed their story: "The important review of the plaintiff's status is what is referred to as the 90-day review. The 30-day review is merely to make sure that no offender is overlooked." [Defendants' Issue Statement, Dkt. 225 at 2.] This scheme, however, does not come close to passing constitutional muster.

      **a.     The "90-day" reviews happen irregularly at best, and may not happen at all.**

"[T]he Due Process Clause mandates that prison officials periodically review whether an inmate placed in administrative segregation continues to pose a threat." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)). Under *Hewitt*, "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates." 459 U.S. at 477 n.9, *abrogated in part by Sandin v. Connor*, 515 U.S. 472 (1995). "Periodic" means "occurring or appearing at intervals." Oxford English Dictionary 1067 (11th ed. 2004). The cases interpreting *Hewitt* reflect that plain meaning. For example, the Seventh Circuit confirmed that *Hewitt* requires "ongoing review" to "determine whether [the criteria for placing the inmate in administrative segregation] are still being met." *Smith v. Shettle*, 946 F.2d 1250, 1254 (7th Cir. 1991). Reviews must also be "sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement[.]" *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012). The court in *Westefer* cited a case holding that a "120-day interval satisfied due process." *Id.* (citing *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990)).

The "90-day" reviews to which Defendants retreat are neither "ongoing" nor "periodic." Though staff can initiate the reviews, *see* Trial Ex. 1, DOC Policy 01-04-101 at § VIII.A.2, Defendants have done so only two times since 2006: once in 2014, and once again in 2017. Defendant Hendrix ordered the 2017 review shortly after this case was remanded and in connection with a call among all DOC Wardens at which Mr. Isby was specifically discussed.

That review generated a unanimous decision that Mr. Isby was "Not Recommended" for release from segregation, and it included written comments from each reviewer. [Trial Ex. 229 (Aug. 15, 2017 90-day review).] Curiously, this "90-day" review came just 19 days after the *same* reviewers unanimously "Recommended" Mr. Isby for release, *without* written comments—except for the Warden's notation that Mr. Isby's request for release was "approved." [Trial Ex. 228 (July 27, 2017 90-day review).]

Defendants, who "must engage" in "periodic reviews," *Hewitt*, 459 U.S. at 477 n.9, say that they engage in those reviews "if and only if the offender requests it." Issue Statement at 3. That is not what they said in their summary judgment motion, Dkt. 53 at 3-4 ("Isby-Israel is reviewed for continued placement in the department-wide administrative segregation every thirty days, under DOC policy"), in their appellate briefing, Appellees' Brief at 22, *Isby v. Brown*, No. 15-3334 (7th Cir. Dec. 7, 2016)("[T]his 30-day review process passes constitutional muster"), or in their Seventh Circuit oral argument ("The 30-day reviews of Isby's placement comply with the teachings of *Hewitt*, *Shettle*, and this Court's decision in *Westefer*.").[2]

### b. Reviews that do not happen regularly, and may never happen at all, are not "frequent," "ongoing," or "periodic" reviews.

No reported court decision has upheld a scheme whereby "periodic" *Hewitt* reviews are conducted "if and only if the offender requests" them. Indeed, whenever courts have considered whether *Hewitt* reviews occur with sufficient frequency, they *assumed meaningful reviews actually occurred*. *E.g.*, *Shettle*, 946 F.2d at 1254 (finding Indiana's 30-day review interval sufficient and noting that "the defendants' uncontradicted affidavits show that these inmates received all the process due them"); *Proctor v. LeClaire*, 846 F.3d 597, 603 (2d Cir. 2017)

---

[2] The audio of the oral argument is available at http://media.ca7.uscourts.gov/sound/2017/gw.15-3334.15-3334_02_08_2017.mp3. The quoted phrase occurs at 15:21 in the recording.

(reviews occurred every 60 days "without fail"); *Westefer v. Snyder*, 422 F.3d 570, 578 (7th Cir. 2005) ("the review committee conducts a review of each prisoner's file every ninety days"); *Toussaint*, 926 F.2d at 803 (120-day interval); *cf. Wilkinson v. Austin*, 545 U.S. 209, 217 (2005) (annual reviews "str[uck] a constitutionally permissible balance") (citation omitted).

The only analogous case we found is *Incumaa v. Stirling*, 791 F.3d 517 (4th Cir. 2015). There, the prison conducted 30-day reviews, which prisoners could *request* to appeal. *Id.* at 523. Echoing Defendants' actions here, the reviewers "merely rubber-stamp[ed] Appellant's incarceration in the SMU (figuratively and sometimes literally), listing in 'rote repetition' the same justification every 30 days." *Id.* at 534 (citation omitted). Conducting a *Mathews* analysis, the court found that the rubber-stamped 30-day review, with only the *possibility* of further review, resulted in "risk of erroneous deprivation" that was "exceedingly high." *Id.*[3] So too here.

In short, *Hewitt* means what it says: Prison officials "must engage in some sort of periodic review[.]" 459 U.S. at 477 n.9. A system of meaningless paperwork and reviews that do not happen at regular intervals—and may not happen at all—does not comply with *Hewitt*.

## II. Alleged failure to request a review cannot constitute a waiver of due process rights.

Defendants claim that "[f]rom 2014 to 2017, … Isby did not request a 90-day review." [Dkt. 225 at 3.] They claim, without citing any authority, that Mr. Isby "therefore waived any claim concerning that review process." [*Id.*] Defendants are wrong. Mr. Isby testified at trial about multiple instances in which he requested a "full" review but did not receive one. But even

---

[3] Review procedures are evaluated under the three *Mathews v. Eldridge* factors: "(1) the private interest … affected by a governmental decision, (2) the governmental interests at stake, and (3) 'the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Isby*, 856 F.3d at 525 (alteration in original) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "[T]he extraordinary length of Isby's segregation in the SCU implicates his due process rights," *id.* at 524, leaving only factors two and three to consider here.

4

if Defendants' assertion were accurate, Mr. Isby's alleged silence could not be a legally effective waiver of his due process rights.

Defendants say that "[f]ailure to exercise [a] due process right is a waiver of it." [Dkt. 265 at 4.] Not so. Procedural due process rights can be waived, but it has long been true that "courts indulge every reasonable presumption against waiver of fundamental constitutional rights and … do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 348, 464 (1938) (quotation omitted). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* Much more recently, the Seventh Circuit held that "to be valid," a waiver of procedural due process rights must be both "knowing and voluntary." *Domka v. Portage County*, 523 F.3d 776, 782 (7th Cir. 2008) (finding waiver where plaintiff signed a document containing "completely unambiguous" waiver language)[4]; *see also United States v. Hill*, 252 F.3d 919, 923 (7th Cir. 2001) (waiver "is demonstrable knowledge of the right being surrendered and a *formal decision* to forego that right") (emphasis added).

Here, Defendants know full well how to employ "completely unambiguous" written waiver language. For example, their annual review forms contain written notice of the prisoner's rights, and a space for the prisoner to sign to waive advance notice of the hearing:

> In Conjunction with this classification hearing, you have the following rights:
> 1. To appear in person.
> 2. To present pertinent information that will be used at the hearing.
> 3. To have all aspects of the classification discussed.
> 4. To be notified in writing of the results of the classification hearing.
>
> Signature of Offender:  x  *Aaron Isby*  Date: x 5/1/15
>
> I wish to waive the 48 hour notification of this classification hearing.
>
> Signature of Offender: ___N/A___  Date: _____
>
> Signature of Staff Member: Charles Dugan  Date: 5/1/2015  Title: Caseworker 4

---

[4] Defendants cite *Domka* for the proposition that "[f]ailure to exercise [a] due process right is a waiver of it." [Dkt. 265 at 4.] That is not at all what *Domka* says. In *Domka*, as explained above, the rights (to home detention and work release) were waived because the plaintiff signed a document containing "completely unambiguous" waiver language, not because he failed to exercise a right. 523 F.3d at 782.

In the form above (Trial Exhibit 13), Mr. Isby indicated his "demonstrable knowledge" of his rights (first signature block), but he did not make a "formal decision to forego" those rights. *Hill*, 252 F.3d at 923. If Defendants wanted Mr. Isby to knowingly waive his due process rights with respect to the 90-day reviews, "then it seems easy enough" for them to have modified the waiver form they already use for the annual reviews to accomplish that aim. *Isby*, 856 F.3d at 527.

More fundamentally, Mr. Isby repeatedly, regularly, and urgently requested meaningful reviews that could lead to his release from solitary confinement. For example:

- Trial Ex. 17 ("I have been on SHU … nine years and this rationale does not explain why");

- Trial Ex. 85 ("This arbitrary action[] of keeping me in SCU violates my substantive due process rights");

- Trial Ex. 96 ("This review is a sham of due process, because it contains boilerplate language[ ] that does not provide a detail[] reason why I have been in SCU … on Administrative Status for five [] years");

- Trial Ex. 122 ("I have spent [five] consecutive years in [SCU] without any hearing");

- Trial Ex. 123 ("I urge a reclassification and transfer out of WVCF/SCU");

- Trial Ex. 208 ("No written detail[] reason has been provided by the WVCF Richard Brown and Facility Review Committee why I was denied release from DWRSH-A");

- Trial Ex. 194 ("I was subjected to a review by Jerry Snyder[;] during this review I contested my prolong confinement on SHU (SCU) DWAS and demand[ed] to be release[d] back into general population at my parent facility at ISP");

- Trial Ex. 16 ("You are urge[d] to review the arbitrary denial of my transfer request by Supt. Richard Brown and grant my transfer!");

- Trial Ex. 42 ("I have been held in solitary confinement at SHU A/S the past ten years without meaningful human contact and my confinement is being prolonged as punishment without penological justification!").[5]

---

[5] For the full timeline of Mr. Isby's appeals and requests, see the parties' Joint Timeline. [Dkt. 264.]

These repeated pleas make clear that Mr. Isby did not make a "formal decision to forego" anything, *Hill*, 252 F.3d at 923, let alone to forego his Constitutional right to periodic review of his years-long solitary confinement.

Instead of rubber-stamping meaningless forms that preordained Mr. Isby's continued solitary confinement, the Defendants should have done what the Constitution requires—*i.e.*, conduct a meaningful review to determine whether the extreme restrictions on Mr. Isby's life, liberty, and happiness could and should continue. None of the Defendants did that. They should not be heard now to argue that Mr. Isby waived his rights.

### III. Mr. Isby is not limited to nominal compensatory damages.

Defendants contend that Mr. Isby is limited to nominal damages of $1.00. [Dkt. 225 at 6 (citing *Carey v. Piphus*, 435 U.S. 247, 267 (1978).] They are mistaken. In *Carey*, the Supreme Court held that "the denial of procedural due process should be actionable for nominal damages *without proof* of actual injury." 435 U.S. at 266 (citation omitted) (emphasis added). That does not foreclose the possibility of compensatory damages *with* proof of actual injury. Under *Carey*, Mr. Isby can "recover compensatory damages," if he proves "that if he had been provided with the due process to which he was entitled, he would not have been sent to DWAS." *Littler v. Ind. Dep't of Corr. Comm'r et al.*, 2013 WL 4551072, at *2 (N.D. Ind. Aug. 28, 2013) (citing *Carey*, 435 U.S. at 266-67.) He has done so.

We know that "no change to [Mr. Isby's] status" occurs when the Defendants generate a "review" having pre-determined the outcome. But we also know that, when Mr. Isby's status is *actually reviewed*, he is recommended for release.[6] That happened in 2002 and 2003. [Trial Exs.

---

[6] Defendants write that it "is essentially undisputed … that Isby belongs in administrative restrictive status housing." [Dkt. 265 at 5.] We respectfully disagree. So did Deputy Commissioner Lemmon in 2005, *see* Trial Ex. 278, and so did the reviewers who signed Trial Exhibit 228 (the July 27, 2017 90-day review)—that is, until Defendant Hendrix

7

280, 281.] It happened in 2005, when after having been conduct-clear for five years, two months, and sixteen days, Mr. Isby was released into facility status by order of then-Deputy Commissioner Bruce Lemmon. [Trial Ex. 278.] And it happened in 2017. [Trial Ex. 228.] (But then Defendant Hendrix directed a re-review, Ex. 229, and that was that.)

Damages, then, are available to compensate Mr. Isby for the injury caused by Defendants' Potemkin reviews. While under the PLRA, damages for "mental and emotional injury" are unavailable absent proof of physical injury, *see* 42 U.S.C. § 1997e(e), Seventh Circuit authority recognizes that not every intangible harm is a "mental and emotional injury." For example, in *Cassidy v. Indiana Department of Corrections*, the Circuit held that, despite the PLRA's prohibition on "mental or emotional" injury, the offender could "nonetheless pursue all of his other claims for damages." 199 F.3d 374 (7th Cir. 2000). *Aref v. Lynch* also is instructive on this point. 833 F.3d 242, 265 (D.C. Cir. 2016). There, the court discussed the "universe of injuries" that are neither mental nor emotional, and for which plaintiffs may recover under the PLRA, noting that "[c]ourts have … consistently treated the loss of liberty as an independently cognizable injury, separate from any mental or emotional harm." *Id.* at 264 (citations omitted).

Another case involving loss of liberty is *Campbell v. Peters*, 1999 WL 1313698, at *13 (N.D. Ill. Sept. 30, 1999), *rev'd on qualified immunity grounds*, 256 F.3d 695 (7th Cir. 2001); *see also Simmons v. Cook*, 154 F.3d 805, 809 (8th Cir. 1998) (affirming $2,000 compensatory damages award for *thirty-two-hour* solitary confinement). In *Campbell*, an Eighth Amendment case, the plaintiff was incarcerated for two years past his release date. The court concluded that the "evidence was sufficient for the jury to conclude that the defendants had actual knowledge of an excessive risk that the plaintiff was subject to prolonged and unjustified confinement." *Id.* at

---

talked to the Warden, whereupon those "same officers recommended against release from restrictive housing a few weeks later." [Dkt. 265 at 4 n.1 (citing Trial Ex. 229).]

\*13. The court upheld the jury's award of $140 for each day of unjustified confinement, finding that it was "roughly comparable to other awards in similar cases." *Id.* One "similar case" the court cited was *Smith v. Rowe*, which affirmed an award of $119 per day of segregation. 761 F.2d 360, 368 (7th Cir. 1985).[7] Here, as in *Campbell*, the trial evidence is sufficient for the Court to conclude that Defendants had "actual knowledge of an excessive risk" that Mr. Isby was being kept in solitary confinement without the "ongoing," "periodic" reports he was entitled to receive.

The Court should award damages along the lines of *Campbell* and *Smith*. We suggest the following calculation: Mr. Isby filed his complaint on May 15, 2012. There is a two-year limitations period for Section 1983 claims. There are 3,071 days between May 15, 2010 and the date of this filing. Using the $119/day figure from *Smith*, the compensatory damages award would be $365,449. Using the $140/day figure from *Campbell*, the award would be $429,940.

Finally, even if Defendants' interpretations of *Carey* and Section 1997e(e) are correct, "nothing prevents an award of punitive damages for constitutional violations when compensatory damages are not available." *Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003) (citation omitted). Punitive damages are not barred by Section 1997e(e) because they "are designed to punish and deter wrongdoers for deprivations of constitutional rights, [so] they are not compensation 'for' emotional and mental injury." *Id.* (citation omitted).[8]

---

[7] *Smith* is the case that we promised we would examine. *Smith* was decided before PLRA Section 1997e(e) took effect in 1996, but its damages figure was cited most recently in *Almighty Supreme Born Allah v. Milling*, 2016 WL 1311997, at \*15 (D. Conn. April 4, 2016), *rev'd on other grounds*, 876 F.3d 48 (2d Cir. 2017). *But see Henderson v. Johnson*, 2007 WL 781767, at \*6 (C.D. Ill. Mar. 12, 2007) (noting that *Smith* predates the PLRA, and "if the damage suffered by segregation is solely mental or emotional," the damages would be barred by the PLRA).

[8] There can be no doubt that Mr. Isby *has suffered* "mental and emotional" injuries, even if he cannot be compensated for them. In *Davis v. Ayala*, Justice Kennedy lamented the "human toll wrought by extended terms in isolation[.]" 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring). *See also id.* (noting that solitary confinement can bring prisoners "to the edge of madness, perhaps to madness itself."). Defendants are remarkably cavalier about these effects. *See, e.g.*, Dkt. 265 at 6 ("Isby's attitude in and toward the court underscores the concerns about his behavior. Substantively, he is in the right housing.").

Punitive damages are available upon proof of "reckless or callous indifference to the federal protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). In light of Mr. Isby's repeated appeals over the years, Defendants certainly knew that Mr. Isby was being held without receiving proper or regular reviews. Defendants' false affidavit and repeated false claims to this Court and to the Seventh Circuit about the nature of the 30-day reviews, as well as their transferring Mr. Isby just 30 working days after the Seventh Circuit's opinion was issued (purportedly because, after 12 years, Mr. Isby suddenly needed a "change of scenery"), demonstrate Defendants' culpability. Punitive damages are warranted here.

## CONCLUSION

Defendants' repeated false statements to this honorable Court and to the Seventh Circuit were made to justify keeping a man in solitary confinement for more than 27 of the last 28 years. These false statements almost evaded detection. But Defendants were caught, and their "review" process was exposed as a sham. Defendants should be made to compensate Mr. Isby for his years of unconscionable injury, should be ordered to provide Mr. Isby the reviews to which he is entitled under the Constitution, and should have punitive damages assessed against them.

Dated: October 11, 2018

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

*/s/ Daniel R. Kelley*
Daniel R. Kelley (Atty. No. 30706-49)
Jason M. Rauch (Atty. No. 34749-49)
Burnell K. Grimes (Atty. No. 34370-49)
300 N. Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Daniel.Kelley@faegrebd.com
Jason.Rauch@faegrebd.com
Burnell.Grimes@faegrebd.com

*Attorneys for Plaintiff Aaron Isby-Israel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2018, I filed the foregoing document electronically. The parties may access this filing through the Court's system. Notice of this filing will be sent to the attorneys of record by the Court's electronic filing system.

*/s/ Daniel R. Kelley*